**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

EIGHT DEER VENTURES, LLC,

               Plaintiff,

v.

CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS,

               Defendant.

No.

PATENT CASE

JURY TRIAL DEMANDED

**COMPLAINT FOR PATENT INFRINGEMENT**

1.     Plaintiff Eight Deer Ventures, LLC brings this complaint for patent infringement against Defendant Cellco Partnership d/b/a Verizon Wireless and alleges as follows.

**THE PARTIES**

2.     Plaintiff Eight Deer Ventures, LLC ("EDV") is a limited liability company organized and existing under the laws of Delaware, with a principal place of business at 99 Hudson Street, 5th Floor, New York, New York 10013.

3.     On information and belief, Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") is a general partnership organized and existing under the laws of Delaware, with a principal place of business at 1 Verizon Way, Basking Ridge, New Jersey 07920. Verizon may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

1

5.     This Court has personal jurisdiction over Verizon because it has committed acts within Texas and this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

6.     On information and belief, Verizon conducts substantial business in this forum, including (a) engaging in the infringing conduct alleged herein in Texas and in this District; (b) regularly and consistently doing and soliciting business in Texas and in this District; (c) engaging in other persistent courses of conduct in Texas and in this District, such as providing customer service and repairs in connection with its business operations; (d) deriving substantial revenue from offering infringing products and services and providing infringing goods to consumers in Texas and in this District; and (e) purposefully establishing such substantial, systematic, and continuous contacts with the state of Texas and with this District such that it can reasonably expect to be subject to suit in this District.

7.     On information and belief, Verizon maintains regular and established places of business in this District, including by (a) maintaining or controlling retail stores in this District, (b) maintaining and operating infringing systems in this District, and (c) maintaining and operating other places of business in this district, including those where research, development, or sales are conducted, where customer service is provided, and/or where repairs are made. For example:

a.     Verizon's website displays information for Verizon retail stores located at 2035 North Central Expressway, Suite 620, McKinney, Texas 75070; 8988 South Broadway Avenue, Suite 110, Tyler, Texas 75703; and 2330 Preston Road, Suite 500, Frisco, Texas 75034 (among others).

b.      Verizon also has offices, including offices for its network technology and planning group, in this district, including, for example, an office in Plano, Texas.

8.      In other recent patent infringement actions, Verizon has either admitted or has not contested this Court's personal jurisdiction over it. *See, e.g.*, Verizon Answer, *Pegasus Wireless Innovation v. Verizon Commc'ns Inc. et al.*, No. 2:23-cv-00640-JRG, Dkt. 36 ¶ 16 (E.D. Tex. Mar. 25, 2024).

9.      Venue in the Eastern District of Texas is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b), including because Verizon is deemed to reside in this District; because a substantial part of the events or omissions giving rise to the claims occurred in this District, including acts of infringement by Verizon; and because Verizon has a regular and established place of business in this District.

10.     In other recent patent infringement actions, Verizon has either admitted or has not contested that this District is a proper venue. *See, e.g.*, Verizon Answer, *Pegasus Wireless Innovation v. Verizon Commc'ns Inc. et al.*, No. 2:23-cv-00640-JRG, Dkt. 36 ¶ 17 (E.D. Tex. Mar. 25, 2024).

## THE PATENTS-IN-SUIT

11.     EDV is the assignee of U.S. Patent No. 9,661,597  (the "'597 Patent," attached as Exhibit A), U.S. Patent No. 9,729,355 (the "'355 Patent," attached as Exhibit B), and U.S. Patent No. 10,715,628 (the "'628 Patent," attached as Exhibit C) (collectively, the "Patents-in-Suit"). The Patents-in-Suit cover groundbreaking innovations in telecommunications networks—including novel methods for remote device deregistration, remote device upgrades, and other remote device management.

12.     ***'597 Patent.*** The '597 Patent discloses a method for remotely deregistering a terminal peripheral (such as a cellphone). Among other things, the '597 Patent recites using a

3

gateway to send a request for deregistration of a terminal peripheral from a machine-to-machine/man ("M2M") service platform or application to the terminal peripheral. The '597 Patent also recites deleting the registration information of the terminal peripheral that is stored by the gateway. Verizon infringes the '597 Patent with systems and devices that remotely trigger the deregistration of a device—resulting in the removal of the device from the network. For example, as described below, Verizon's "ThingSpace Platform" allows customers to log in to a website and deregister a device in the specific manner recited in the '597 Patent.

13.     *'355 Patent.* The '355 Patent discloses a method for remotely managing a terminal peripheral (such as remotely triggering updates to a device's firmware). Among other things, the '355 Patent recites sending a remote management operation from a M2M service platform or application via a M2M gateway; the M2M gateway forwarding the remote management operation to a terminal peripheral; the terminal peripheral reporting execution information about the remote management operation (such as "success" or "failure," along with the reason for any failure) back to the M2M service platform or application via the M2M gateway; and the M2M gateway processing that execution information by either removing the remote management operation from the terminal peripheral (if successful) or resending the remote management operation at a preset time (if unsuccessful). Verizon infringes the '355 Patent with systems and devices that remotely trigger firmware upgrades. For example,  as described below, Verizon's ThingSpace Platform allows customers to perform remote upgrades in the specific manner recited in the '355 Patent.

14.     *'628 Patent.* The '628 Patent discloses an attribute operating method, including: receiving a structured request to operate on a resource's attribute; determining the requested operation; executing the requested operation on the attribute; and reporting a result. Before the '628 Patent, traditional telecommunications provisioning did not permit modifying an attribute

(such as adding a new phone line for an existing account) without deleting and reconstructing the entire attribute. The '628 Patent solved this technological problem by permitting modifications to an existing attribute (without having to reconstruct the entire attribute). Verizon infringes the '628 Patent with systems and devices that allow an administrator to perform remote operations on device attributes without having to reconstruct those attributes from scratch. For example, as described below, Verizon's "Provisioning Platform" allows customers to perform remote operations on device attributes in the specific manner recited in the '628 Patent.

### THE '597 PATENT

15.    Verizon infringes the '597 Patent with systems and devices that remotely deregister devices in the specific manner recited in the '597 Patent.

16.    The ThingSpace Platform is Verizon's "Internet of Things" (or "IoT") platform, allowing accountholders to manage their devices and applications on Verizon's network from a centralized location:[1]



---

[1] https://thingspace.verizon.com/about.html (last visited July 10, 2026).

17.    The "Deactivate Service for Devices" feature of Verizon's ThingSpace Platform causes the remote deregistration of a device, in a manner that infringes the '597 Patent:[2]



18.    Upon receiving the HTTP request specified below, servers for Verizon's ThingSpace Platform send the deactivation request to Unified Data Management ("UDM") servers:[3]

## Request Components

## HTTP Request

POST https://thingspace.verizon.com/api/m2m/v1/devices/actions/deactivate

---

[2] https://thingspace.verizon.com/resources/documentation/connectivity/API_Reference/Deactivate_Devices/ (last visited July 10, 2026).
[3] https://thingspace.verizon.com/resources/documentation/connectivity/API_Reference/Deactivate_Devices/ (last visited July 10, 2026).

19.     After receiving the deactivation request, the UDM servers send the deregistration request to the Access and Mobility Management Function ("AMF"), as shown below:[4]



**4.2.2.3.3        Network-initiated Deregistration**

The procedure depicted in Figure 4.2.2.3.3-1 shows Network-initiated Deregistration procedure. The AMF can initiate this procedure for either explicit (e.g. by O&M intervention or if the AMF determines that no S-NSSAI can be provided in the Allowed NSSAI for the UE) or implicit (e.g. expiring of Implicit Deregistration timer). The UDM can trigger this procedure for operator-determined purposes to request the removal of a subscriber's RM context and PDU Session(s) of the UE.

**Figure 4.2.2.3.3-1: Network-initiated Deregistration**

20.     When the deactivation request is sent to the AMF, it identifies the device by Subscription Permanent Identifier ("SUPI"). It also includes a "Removal Reason" (such as "Subscription Withdrawn"), which indicates that the device is being deactivated:[5]

---

[4] https://www.etsi.org/deliver/etsi_ts/123500_123599/123502/16.07.00_60/ts_123502v160700p.pdf (last visited July 10, 2026).
[5] https://www.etsi.org/deliver/etsi_ts/123500_123599/123502/16.07.00_60/ts_123502v160700p.pdf (last visited July 10, 2026).



**Figure 4.2.2.3.3-1: Network-initiated Deregistration**

1. [Conditional] If the UDM wants to request the immediate deletion of a subscriber's RM contexts and PDU Sessions, the UDM shall send a Nudm_UECM_DeregistrationNotification (SUPI, Access Type, Removal Reason) message with Removal Reason set to Subscription Withdrawn to the registered AMF. The Access Type may indicate 3GPP Access, non-3GPP Access or both.

21.     After the deactivation request is received by the AMF, it is sent to the accountholder's device ("User Equipment" or "UE"). The device receives the deactivation request and sends back a message confirming receipt of the deactivation request:[6]

**Figure 4.2.2.3.3-1: Network-initiated Deregistration**

---

[6] https://www.etsi.org/deliver/etsi_ts/123500_123599/123502/16.07.00_60/ts_123502v160700p.pdf (last visited July 10, 2026).

22.     The device's processing of the deregistration request results in the deletion of the

device's subscription information:[7]

4.2.2.3.3     Network-initiated Deregistration

The procedure depicted in Figure 4.2.2.3.3-1 shows Network-initiated Deregistration procedure. The AMF can initiate this procedure for either explicit (e.g. by O&M intervention or if the AMF determines that no S-NSSAI can be provided in the Allowed NSSAI for the UE) or implicit (e.g. expiring of Implicit Deregistration timer). The UDM can trigger this procedure for operator-determined purposes to request the removal of a subscriber's RM context and PDU Session(s) of the UE.

23.     If the device is idle when the deregistration request is sent, the device processes the

deregistration request after receiving a page from the AMF:[8]

2.   If the AMF receives Nudm_UECM_DeregistrationNotification in Step 1 with Removal Reason as Subscription Withdrawn, the AMF executes Deregistration procedure over the access(es) the Access Type indicates.

The AMF-initiated Deregistration procedure is either explicit (e.g. by O&M intervention or if the AMF determines that no S-NSSAI can be provided in the Allowed NSSAI for the UE) or implicit. The AMF does not send the Deregistration Request message to the UE for Implicit Deregistration. If the UE is in CM-CONNECTED state, the AMF may explicitly deregister the UE by sending a Deregistration Request message (Deregistration type, Access Type, [list of Rejected S-NSSAIs, each of them with the appropriate rejection cause value]) to the UE. The Deregistration type may be set to Re-registration in which case the UE should re-register at the end of the Deregistration procedure. Access Type indicates whether Deregistration procedure applies to the 3GPP access or non-3GPP access, or both. If the Deregistration Request message is sent over 3GPP access and the UE is in CM-IDLE state in 3GPP access, the AMF pages the UE. The list of Rejected S-NSSAIs, each of them with the appropriate rejection cause value, is provided if the AMF determines that no S-NSSAI can be provided to the UE in the Allowed NSSAI.

24.     The deactivation is also communicated back through the UDM servers to the

servers for the Verizon ThingSpace Platform:[9]

---

[7] https://www.etsi.org/deliver/etsi_ts/123500_123599/123502/16.07.00_60/ts_123502v160700p.pdf (last visited July 10, 2026).
[8] https://www.etsi.org/deliver/etsi_ts/123500_123599/123502/16.07.00_60/ts_123502v160700p.pdf (last visited July 10, 2026).
[9] https://www.etsi.org/deliver/etsi_ts/123500_123599/123502/16.07.00_60/ts_123502v160700p.pdf (last visited July 10, 2026).



**Figure 4.2.2.3.3-1: Network-initiated Deregistration**

25.     An example of the confirmation message sent back to the servers for the Verizon ThingSpace Platform is shown below:[10]

**Example Success Callback Response**

```
{
        "username":"",
        "password":"",
        "requestId":"595f5c44-c31c-4552-8670-020a1545a84d",
        "deviceIds":[
          {
            "id":"15-digit IMEI",
            "kind":"imei"
          },
          {
            "id":"20-digit ICCID",
            "kind":"iccid"
          }
        ],
        "deviceResponse":{
          "deactivateResponse":{
            "deactivated":true
          }
        },
        "status":"Success",
        "callbackCount":1,
        "maxCallbackThreshold":4
}
```

---

[10] https://thingspace.verizon.com/resources/documentation/connectivity/API_Reference/Deactivate_Devices/ (last visited July 10, 2026).

26. In short, Verizon's ThingSpace Platform performs all the steps required by the '597 Patent—including by sending a command to deregister a device, providing notifications about the status of the deregistration, and removing the device from the network upon deregistration.

## THE '355 PATENT

27. Verizon infringes the '355 Patent with systems and devices that remotely trigger device upgrades in the specific manner recited in the '355 Patent.

28. For example, Verizon's ThingSpace Platform infringes the '355 Patent by allowing accountholders to "Schedule a Firmware Upgrade":[11]



---

[11] https://thingspace.verizon.com/documentation/apis/software-management/api-reference/schedule-firmware-upgrade.html (last visited July 10, 2026).

29.    Verizon accountholders can remotely trigger these firmware upgrades by creating a "campaign" on the ThingSpace Platform's website, as shown below:[12]



30.    Devices connected to the Verizon ThingSpace Platform communicate information to the server for the ThingSpace Platform, such as the device's identification number and its make and model:[13]

---

[12] https://thingspace.verizon.com/content/dam/thingspace-portal/resources/help/pdf/viewAll.pdf (last visited July 10, 2026).

[13] https://thingspace.verizon.com/content/dam/thingspace-portal/resources/help/pdf/viewAll.pdf (last visited July 10, 2026).



31.     Verizon accountholders can remotely trigger a firmware upgrade for a particular device by selecting that device when creating a "campaign," as shown below:[14]



32.     The HTTP request used to initiate the firmware upgrade is shown below:[15]

---

[14] https://thingspace.verizon.com/content/dam/thingspace-portal/resources/help/pdf/viewAll.pdf (last visited July 10, 2026).

[15] https://thingspace.verizon.com/documentation/apis/software-management/api-reference/schedule-firmware-upgrade.html (last visited July 10, 2026).

## Request Components

## HTTP Request

POST `https://thingspace.verizon.com/api/fota/v1/upgrades`

33.    The device communicates a result for the upgrade to the server for the ThingSpace

Platform, as shown with the "UpgradeFailed" and "Completed" indications below:[16]



[16] https://thingspace.verizon.com/content/dam/thingspace-portal/resources/help/pdf/viewAll.pdf (last visited July 10, 2026).



34.    For example, when the firmware upgrade is successful, the device communicates that result back to the ThingSpace Platform:[17]



---

[17] https://forum.sierrawireless.com/t/unable-to-update-firmware-on-em7305/27590 (last visited July 10, 2026).

35.    The device also communicates the new version of the firmware that has been downloaded:[18]

36.    Conversely, when the firmware upgrade is unsuccessful, the device communicates that result along with a primary error code. The example below shows a primary error code of "67," indicating a "Firmware process update timeout":[19]

37.    The device processes the upgrade based on the International Mobile Equipment Identity ("IMEI") number identified in the firmware upgrade command, as shown below:[20]

---

[18] https://forum.sierrawireless.com/t/unable-to-update-firmware-on-em7305/27590/8 (last visited July 10, 2026).
[19] https://forum.sierrawireless.com/t/em7455-fail-to-upgrade-firmware/28423 (last visited July 10, 2026).
[20] https://forum.sierrawireless.com/t/unable-to-update-firmware-on-em7305/27590/8 (last visited July 10, 2026).



38.    For example, the screenshot below shows the new version of the firmware that has been downloaded:[21]



---

[21] https://thingspace.verizon.com/documentation/apis/software-management/api-reference/schedule-firmware-upgrade.html (last visited July 10, 2026).

39.    If the firmware upgrade is successful, the status for the "campaign" moves to "finished," resulting in the removal of the firmware upgrade command from the device:[22]

4. After the campaign starts, it is "in progress" during the device update.
   a. Once the campaign end date has been reached, the campaign status moves to "Finished."
   b. If the OMA-DM or LWM2M server schedule a campaign, it moves to "UpgradeFailed" status.

40.    If the firmware upgrade is unsuccessful, however, Verizon accountholders can resend the firmware upgrade command according to a preset schedule:[23]



41.    In short, Verizon's ThingSpace Platform performs all the steps required by the '355 Patent—including by sending a remote command to perform a firmware upgrade, providing notifications about the status of the upgrade, and reattempting the upgrade at a preset time if at first unsuccessful.

---

[22] https://thingspace.verizon.com/documentation/apis/software-management/getting-started/about_campaigns.html (last visited July 10, 2026).

[23] https://thingspace.verizon.com/documentation/apis/software-management/getting-started/about_campaigns.html (last visited July 10, 2026).

**THE '628 PATENT**

42.     Verizon infringes the '628 Patent with systems and devices that operate on device attributes in the specific manner recited in the '628 Patent.

43.     For example, Verizon's Provisioning Platform operates on device attributes in a manner that infringes the '628 Patent, including by allowing Verizon accountholders to "Add a line" to their existing account (without having to reconstruct the entire account):[24]

**My Verizon app**
**Add a New Line of Service**

Use the My Verizon app to add a new line of service. This keeps all your connected devices and billing information organized under one account.

44.     Verizon accountholders can access the "Add a line" feature through the application or website for their Verizon account. Verizon accountholders select specific parameters for the new line, including the applicable plan for the line and the device with which the line is associated:[25]

**Pick or add your new device.**

If you're the Account Manager or Account Owner on your plan, you can complete this step in the My Verizon app or portal.

You can add a new device and a new line to your account on the Devices page in My Verizon:

1.  Select the device you'd like to purchase.
2.  Choose a pricing option for your device.
3.  Select a device protection option.
4.  Follow the prompts to select a plan, features and services, and accessories to complete your order.
5.  Assign a new phone number to the device or opt to transfer an existing number from another carrier. Note, if you're adding a tablet, smartwatch, or another connected device, you can skip this step.

Once you finish this, you'll have successfully added the new line.

45.     For example, Verizon offers the following plans when adding a new line:[26]

---

[24] https://www.verizon.com/support/knowledge-base-213096/ (last visited July 10, 2026).
[25] https://www.verizon.com/articles/verizon-unlimited-plans/how-to-add-someone-to-your-verizon-plan/ (last visited July 10, 2026).
[26] https://www.wirefly.com/guides/verizon-mobile-hotspot-review (last visited July 10, 2026).

## Now let's choose a plan for your line.

| First 500 + 500 MB bonus data | First 3 + 3 GB bonus data | First 8 + 8 GB bonus data | First 15 + 15 GB bonus data |
|---|---|---|---|
| **$30** /mo. | **$40** /mo. | **$50** /mo. | **$70** /mo. |
| Doesn't include taxes & fees. | Doesn't include taxes & fees. | Doesn't include taxes & fees. | Doesn't include taxes & fees. |
| **Includes:** | **Includes:** | **Includes:** | **Includes:** |
| First 1 GB, includes 500 MB of bonus data every month **See Details** | First 6 GB, includes 3 GB of bonus data every month **See Details** | First 16 GB, includes 8 GB of bonus data every month **See Details** | First 30 GB, includes 15 GB of bonus data every month **See Details** |
| 4G LTE High Speed Data. | 4G LTE High Speed Data. | 4G LTE High Speed Data. | 4G LTE High Speed Data. |
| Mobile Hotspot. | Mobile Hotspot. | Mobile Hotspot. | Mobile Hotspot. |
| Add on data bundles ($5/$10/$20). | Auto Pay discount (Save $5/line). | Auto Pay discount (Save $5/line). | Auto Pay discount (Save $5/line). |
| | Multiline discount (Save $10/line). | Multiline discount (Save $15/line). | Multiline discount (Save $20/line). |
| | Add on data bundles ($5/$10/$20). | Add on data bundles ($5/$10/$20). | Add on data bundles ($5/$10/$20). |

46.    Verizon instructs accountholders on how to select these attributes when adding a new line:[27]

**My Verizon app**

**Add a New Line of Service**

Use the My Verizon app to add a new line of service. This keeps all your connected devices and billing information organized under one account.

**Steps**

1. Open the **My Verizon app** from an Account Owner or Account Manager device.

2. Tap the **Mobile tab** then tap **Manage devices**.

3. Tap **Add a line**.

4. Select **Get a new device**.
   To activate a device you already own, refer to Activate New Line Using Previously Owned Device.

5. Select an option then follow the onscreen prompts to select and customize your new device.

6. Tap **Select plan** then follow the onscreen prompts to customize your plan.

7. Do one of the following:
   - Get a New Number
     1. Select **Get a new number**.
     2. Choose the first 6 digits of your number by tapping the **New phone number dropdown menu** then tap **Next**.
        If the ZIP code entered doesn't have any numbers available, tap **Edit** then enter a different ZIP code.
   - Use Your Number From Another Carrier
     1. Select **Bring a number** then tap **Next**.
     2. Enter the required info (e.g., Existing phone number, Account holder's address, etc.), accept the Terms & Conditions then tap **Next**.

8. Follow the onscreen prompts to select and customize your new device.

9. Select **Trade-in my device** then follow the onscreen steps to review and accept the trade-in value or tap **No trade-in** to skip the trade-in option.

10. Select a payment option (retail price or device payment).

---

[27] https://www.verizon.com/support/knowledge-base-213096/ (last visited July 10, 2026).

47.     Once the Verizon accountholder places the order to add the new line, the command

is sent through Verizon's Provisioning Platform to the device:[28]



48.     When adding a new line, Verizon's Provisioning Platform determines whether or

not the name assigned for the new device is included in the memory of the Verizon accountholder's

account. It also determines whether or not the name assigned for the new device has already been

assigned to an existing device:[29]

---

[28] https://www.verizon.com/support/knowledge-base-213096/ (last visited July 10, 2026).
[29] https://scache.vzw.com/dam/support/myv-tutorial/tutorial.html (last visited July 10, 2026).



49.     Verizon's Provisioning Platform judges whether or not the attribute (such as a phone line) can be added as a multiple. For example, if a new line cannot be created as a multiple, Verizon's Provisioning Platform provides an error message:[30]



50.     In short, Verizon's Provisioning Platform infringes the '628 Patent, including with its "Add a New Line of Service" feature.

## COUNT I: INFRINGEMENT OF '597 PATENT

51.     EDV repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

---

[30] https://support.google.com/googlepixelwatch/thread/183762665/unable-to-activate-pixel-watch-with-verizon?hl=en (last visited July 10, 2026).

52.     On May 23, 2017, the United States Patent and Trademark Office duly and legally issued the '597 Patent, entitled "Method and Device for Deregistering a Terminal Peripheral."

53.     EDV owns all right, title, and interest in and to the '597 Patent, including the right to assert all causes of action under the '597 Patent and the right to any remedies for the infringement of the '597 Patent.

54.     Verizon has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claims 1 and 10, of the '597 Patent in violation of 35 U.S.C. § 271(a). For example, Verizon has, without authorization, operated, used, and sold, and continues to operate, use, and sell, access to the Verizon ThingSpace Platform, which is capable of remotely deregistering a terminal peripheral in the manner described in the claims of the '597 Patent, thereby infringing at least claim 1 of the '597 Patent. Verizon's infringing use of the '597 Patent includes Verizon's internal use and testing of the Verizon ThingSpace Platform.

55.     Verizon's ThingSpace Platform satisfies all claim limitations of one or more of the claims of the '597 Patent, including at least claims 1 and 10.

56.     Verizon has indirectly infringed and continues to indirectly infringe the '597 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including agents, subsidiaries, affiliates, partners, service providers, customers, and/or end users, in this District and elsewhere in the United States, through the dissemination and maintenance of the Verizon ThingSpace Platform and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such systems with knowledge and the specific intent that its efforts will result in the direct infringement of the '597 Patent.

23

57.     For example, Verizon took active steps to encourage end users to utilize the Verizon ThingSpace Platform in a manner it knows will directly infringe each element of at least claim 1 of the '597 Patent, including by instructing end users on how to remotely deregister a device using the Verizon ThingSpace Platform. The infringing aspects of the Verizon ThingSpace Platform otherwise have no meaningful use, let alone any meaningful non-infringing use.

58.     Verizon has indirectly infringed and continues to indirectly infringe the '597 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Verizon ThingSpace Platform, including the infringing remote deregistration features, with knowledge that the Verizon ThingSpace Platform is especially designed or adapted to operate in a manner that infringes the '597 Patent and despite the fact that the infringing technology or aspects of the products are not a staple of commerce suitable for substantial non-infringing use.

59.     For example, Verizon is aware that the remote deregistration functionality described above and included in the Verizon ThingSpace Platform infringes the '597 Patent, including at least claim 1. Verizon continues to sell and offer to sell the Verizon ThingSpace Platform in the United States after receiving notice of the '597 Patent and how the remote deregistration functionality infringes that patent.

60.     Verizon's acts of infringement have caused and continue to cause damages to EDV, and EDV is entitled to recover from Verizon for the damages EDV has sustained as a result of those wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '597 Patent, together with interest and costs as fixed by the Court.

61.     Verizon has had notice of the '597 Patent at least as of the date of this Complaint.

## COUNT II: INFRINGEMENT OF '355 PATENT

62.    EDV repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

63.    On August 8, 2017, the United States Patent and Trademark Office duly and legally issued the '355 Patent, entitled "Method, Device, and System for Remote Management of Terminal Peripheral."

64.    EDV owns all right, title, and interest in and to the '355 Patent, including the right to assert all causes of action under the '355 Patent and the right to any remedies for the infringement of the '355 Patent.

65.    Verizon has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claims 1 and 10, of the '355 Patent in violation of 35 U.S.C. § 271(a). For example, Verizon has, without authorization, operated, used, and sold, and continues to operate, use, and sell, access to the Verizon ThingSpace Platform, which is capable of remotely causing firmware upgrades in the manner described in the claims of the '355 Patent, thereby infringing at least claim 1 of the '355 Patent. Verizon's infringing use of the '355 Patent includes Verizon's internal use and testing of the Verizon ThingSpace Platform.

66.    Verizon's ThingSpace Platform satisfies all claim limitations of one or more of the claims of the '355 Patent, including at least claims 1 and 10.

67.    Verizon has indirectly infringed and continues to indirectly infringe the '355 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including agents, subsidiaries, affiliates, partners, service providers, customers, and/or end users, in this District and elsewhere in the United States, through the dissemination and maintenance of the Verizon ThingSpace Platform and the creation and

25

dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such system, with knowledge and the specific intent that its efforts will result in the direct infringement of the '355 Patent.

68.     For example, Verizon took active steps to encourage end users to utilize the Verizon ThingSpace Platform in a manner it knows will directly infringe each element of at least claim 1 of the '355 Patent, including by instructing end users on how to remotely install firmware upgrades using the Verizon ThingSpace Platform. The infringing aspects of the Verizon ThingSpace Platform otherwise have no meaningful use, let alone any meaningful non-infringing use.

69.     Verizon has indirectly infringed and continues to indirectly infringe the '355 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Verizon ThingSpace Platform, including the infringing firmware upgrade features, with knowledge that the Verizon ThingSpace Platform is especially designed or adapted to operate in a manner that infringes the '355 Patent and despite the fact that the infringing technology or aspects of the products are not a staple of commerce suitable for substantial non-infringing use.

70.     For example, Verizon is aware that the firmware upgrade functionality described above and included in the Verizon ThingSpace Platform infringes the '355 Patent, including at least claim 1. Verizon continues to sell and offer to sell the Verizon ThingSpace Platform in the United States after receiving notice of the '355 Patent and how the firmware upgrade functionality infringes that patent.

71.     Verizon's acts of infringement have caused and continue to cause damages to EDV, and EDV is entitled to recover from Verizon the damages EDV has sustained as a result of those wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty

26

for the use made of the invention in the '355 Patent, together with interest and costs as fixed by the Court.

72.     Verizon has had notice of the '355 Patent at least as of the date of this Complaint.

**COUNT III: INFRINGEMENT OF '628 PATENT**

73.     EDV repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

74.     On July 14, 2020, the United States Patent and Trademark Office duly and legally issued the '628 Patent, entitled "Attribute Operating Method and Device."

75.     EDV owns all right, title, and interest in and to the '628 Patent, including the right to assert all causes of action under the '628 Patent and the right to any remedies for the infringement of the '628 Patent.

76.     Verizon has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claims 1 and 9, of the '628 Patent in violation of 35 U.S.C. § 271(a). For example, Verizon has, without authorization, operated, used, and sold, and continues to operate, use, and sell, access to the Verizon Provisioning Platform, which is capable of remotely performing operations on attributes, thereby infringing at least claim 1 of the '628 Patent. Verizon's infringing use of the '628 Patent includes Verizon's internal use and testing of the Verizon Provisioning Platform.

77.     Verizon's Provisioning Platform satisfies all claim limitations of one or more of the claims of the '628 Patent, including at least claims 1 and 9.

78.     Verizon has indirectly infringed and continues to indirectly infringe the '628 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including agents, subsidiaries, affiliates, partners, service providers, customers, and/or end users, in this District and elsewhere in the United States, through the

27

dissemination and maintenance of the Verizon Provisioning Platform and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such systems with knowledge and the specific intent that its efforts will result in the direct infringement of the '628 Patent.

79. For example, Verizon took active steps to encourage end users to utilize the Verizon Provisioning Platform in a manner it knows will directly infringe each element of at least claim 1 of the '628 Patent, including by instructing end users on how to perform remote operations on attributes without reconstructing those attributes. The infringing aspects of the Verizon Provisioning Platform otherwise have no meaningful use, let alone any meaningful non-infringing use.

80. Verizon has indirectly infringed and continues to indirectly infringe the '628 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Verizon Provisioning Platform, including the infringing attribute operation features, with knowledge that the Verizon Provisioning Platform is especially designed or adapted to operate in a manner that infringes the '628 Patent and despite the fact that the infringing technology or aspects of the products are not a staple of commerce suitable for substantial non-infringing use.

81. For example, Verizon is aware that the attribute operation functionality described above and included in the Verizon Provisioning Platform infringes the '628 Patent, including at least claim 1. Verizon continues to sell and offer to sell the Verizon Provisioning Platform in the United States after receiving notice of the '628 Patent and how the attribute operation functionality infringes that patent.

82.     Verizon's acts of infringement have caused and continue to cause damages to EDV, and EDV is entitled to recover from Verizon for the damages EDV has sustained as a result of those wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '628 Patent, together with interest and costs as fixed by the Court.

83.     Verizon has had notice of the '628 Patent at least as of the date of this Complaint.

## DEMAND FOR JURY TRIAL

84.     EDV demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## FEES AND COSTS

85.     To the extent that Verizon's willful and deliberate infringement or litigation conduct supports a finding that this is an "exceptional case," an award of attorneys' fees and costs to EDV is justified pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, EDV prays for relief as follows:

(a)     Declaring that Verizon has infringed the Patents-in-Suit, contributed to the infringement of the Patents-in-Suit, and/or induced the infringement of the Patents-in-Suit;

(b)     Awarding EDV damages arising out of this infringement of the Patents-in-Suit, including enhanced damages pursuant to 35 U.S.C. § 284, and pre-judgment and post-judgment interest, in an amount according to proof;

(c)     Permanently enjoining Verizon and its officers, agents, servants, employees, and those acting in privity with them, from further infringement, including inducing infringement and contributory infringement, of the Patents-in-Suit;

(d)     Awarding attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

29

      (e)     Awarding EDV such other costs and further relief as the Court deems just and proper.

Respectfully submitted,                                                                July 10, 2026

*/s/ Joseph S. Grinstein*

Joseph S. Grinstein (Lead Attorney)
  Texas State Bar No. 20213950
  jgrinstein@susmangodfrey.com
Shawn Blackburn
  Texas State Bar No. 24089989
  sblackburn@susmangodfrey.com
Meng Xi
  California State Bar No. 280099
  mxi@susmangodfrey.com
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666

Daniel D. Duhaime
  (*pro hac vice* forthcoming)
  New York State Bar No. 5780432
  dduhaime@susmangodfrey.com
SUSMAN GODFREY LLP
One Manhattan West, 50th Floor
New York, New York 10001
Tel: (212) 336-8330
Fax: (212) 336-8340

Andrea Fair
  Texas State Bar No. 24078488
  andrea@millerfairhenry.com
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Tel: (903) 757-6400
Fax: (903) 757-2323

*Counsel for Plaintiff Eight Deer Ventures, LLC*